# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN McLAUGHLIN,<br><br>          Plaintiff,<br><br>     v.<br><br>DIAZ, et al.,<br><br>          Defendants. | **Case No.  1:14-cv-00784-AWI-JLT (PC)**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS AMENDED COMPLAINT WITH PREJUDICE FOR FAILURE/INABILITY TO STATE A CLAIM**<br><br>**(Doc. 16)**<br><br>**30-DAY DEADLINE** |

## I.      Background

Plaintiff, Martin McLaughlin, is a prisoner in the custody of the California Department of Corrections and Rehabilitation. Plaintiff's Second Amended Complaint is now before the Court for screening.

### A.      Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

///

1

**B.**     **Summary of the Second Amended Complaint**

Plaintiff complains of acts that occurred while he was an inmate at California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California.  Plaintiff names the following Defendants:  Warden R. Diaz; and Correctional Officers K. Ramirez, R. Garcia, L. DeLaTorre, M. Hodges, J.D. Lozano, R. Tolson, and R. Hall.  However, Plaintiff has drawn lines through the names of Defendants R. Garcia, L. DeLaTorre, M. Hodges, J.D. Lozano, R. Tolson, and R. Hall, does not state any allegations against them, and filed a motion to dismiss them which is concurrently considered.  (Doc. 15.)  Plaintiff seeks monetary and declaratory relief.

Plaintiff delineates three claims:  (1) "Freedom From Cruel and Unusual Punishment;" (2) "Substantive Due Process;" and (3) "Procedural Due Process."  These claims are premised on Plaintiff's placement on "C/C status" by Defendant Ramirez in March of 2013 for two rule violations he received in the latter part of 2012.

As discussed below, despite repeatedly being given the applicable legal standards and repeated attempts at amending, Plaintiff does not state any cognizable claims.  Plaintiff was warned in the last screening order that he was being given a final opportunity to amend.  Thus, since Plaintiff has repeatedly been given the applicable legal standards, attempted to state cognizable claims, and has failed to do so, it appears that he is unable to correct the deficiencies in his pleading such that additional opportunities to amend would prove futile and need not be granted.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012).

**C.**     **Plaintiff's Claims**

**1. Cruel & Unusual Punishment**

In this claim, Plaintiff alleges that on March 15, 2013 he was taken to prison classification where Defendant K. Ramirez advised Plaintiff that he was being put on "C status."  (Doc. 16, p. 4.)  Plaintiff argued that he doesn't receive conduct credits good or bad since his sentence is life without the possibility of parole and that he was "at the CCMS level of Mental Health Care" so, at the very least he should be evaluated before being segregated.  (*Id.*)  Defendant Ramirez advised Plaintiff that he could appeal it if he desired, but she would hear the appeal and deny it.  (*Id.*, at p. 5.)  Plaintiff was then told he could and should remove himself from the committee room and

2

about an hour later he was rehoused in Building 3 which isn't Administrative Segregation, but rather is a "partial C Status building" and all of Plaintiff's property was confiscated.  (*Id.*)  Plaintiff asked the officer who was escorting him why his hot pot and fan were confiscated and the response was that Defendant Ramirez told him to take all of Plaintiff's property and that Plaintiff was lucky to get to keep some books.  (*Id.*)  The cell in which Plaintiff was placed reminded him of administrative segregation.  (*Id.*)  Plaintiff names Defendant Ramirez under this claim for relief.  (*Id.*)

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).  To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference. . . ."  *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  *Farmer* at 834.  Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety."  *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted).  Although the Constitution " 'does not mandate comfortable prisons,' " *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes*, 452 U.S. at 349), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard*, 887 F.2d at 137.  Some conditions of confinement may establish an Eighth Amendment violation "in combination" when

3

1  each would not do so alone, but only when they have a mutually enforcing effect that produces

2  the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for

3  example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501

4  U.S. at 304-05(comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (outdoor

5  exercise required when prisoners otherwise confined in small cells almost 24 hours per day), with

6  *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) (outdoor exercise not required when prisoners

7  otherwise had access to dayroom 18 hours per day)).  Further, temporarily unconstitutional

8  conditions of confinement do not necessarily rise to the level of constitutional violations. *See*

9  *Anderson*, 45 F.3d 1310, *ref. Hoptowit*, 682 F.2d at 1258 (*abrogated on other grounds by Sandin*,

10  515 U.S. 472 (in evaluating challenges to conditions of confinement, length of time the prisoner

11  must go without basic human needs may be considered)).  Thus, Plaintiff's factual allegations as

12  to the conditions he complains of must be evaluated to determine whether they demonstrate an

13  objective deprivation of a basic human need -- individually or in combination.

14        Objectively, Plaintiff's allegations still do not rise to the level of an extreme deprivation of

15  a necessity of life.  While Plaintiff would have been more comfortable if his fan and hot pot were

16  not confiscated, their absence does not equate to an inadequacy of shelter, food, clothing,

17  sanitation, medical care, or personal safety; and Plaintiff states nothing about any other conditions

18  of his cell in the "C Status building" from which to draw any such conclusions.

19        Since Plaintiff's allegations once again fail to meet the objective requirement, the

20  subjective requirement, *Wilson*, 501 U.S. at 303; *Johnson*, 217 F.3d at 733, as to the culpability of

21  Defendant Ramirez's state of mind when she had Plaintiff's personal items confiscated need to be

22  addressed.  In other words, Plaintiff has failed to show that he was subjected to inhumane

23  conditions via the confiscation of his personal property to require review of Defendant Ramirez's

24  subjective intent.

25        Since Plaintiff has not shown that he was denied a basic necessity of life he fails to state a

26  cognizable claim against Defendant Ramirez for cruel and unusual punishment via his conditions

27  of confinement based on the confiscation of his personal property upon his placement in a cell in

28  the C Status building.

1          **2. Substantive Due Process**

2          Plaintiff alleges that Defendant Ramirez's instruction to have all of his property taken

3    away violated his substantive due process since the CDCR policy only authorizes that an inmate

4    placed on C Status may have his "entertainment appliances" suspended for certain amounts of

5    time for any particular rule violation and Plaintiff knows of no other inmates who were stripped

6    of all of their property.  (Doc. 16, p. 5.)  Plaintiff further alleges that a liberty interest was created

7    by CDCR policy that states C Status inmates are not allowed to possess entertainments appliances

8    for certain amounts of time while in this privilege group.  (*Id.*)

9          As stated in the prior screening order, the Due Process Clause protects prisoners from

10   being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556

11   (1974), and prisoners have a protected interest in their personal property, *Hansen v. May*, 502

12   F.2d 728, 730 (9th Cir. 1974).  However, while an authorized, intentional deprivation of property

13   is actionable under the Due Process Clause, *see Hudson v. Palmer*, 468 U.S. 517, 532, n.13

14   (1984) (citing *Logan v. Zimmerman Brush Co*., 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d

15   1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of

16   property by a state employee "constitute a violation of the procedural requirements of the Due

17   Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the

18   loss is available," *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

19         Plaintiff's allegations that Defendant Ramirez ordered all of Plaintiff's property to be

20   removed on C Status show that the removal of all of Plaintiff's property except his entertainment

21   appliances was an unauthorized deprivation for which Plaintiff has adequate post-deprivation

22   remedy under State law.

23         As to plaintiff's allegation that CDCR policy created a liberty interest in his entertainment

24   appliances by only allowing their suspension for certain amounts of time, this cannot be found to

25   be a protected liberty interest, the deprivation of which entitled Plaintiff to due process.   "The

26   concept of substantive due process . . . forbids the government from depriving a person of life,

27   liberty, or property *in such a way that shocks the conscience* or interferes with rights implicit in

28   the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)

(citation and internal quotation marks omitted) (emphasis added).  The deprivation of Plaintiff's radio while he was classified as C Status—a disciplinary classification, in this case—neither shocks the conscience, nor interferes with the rights implicit in the concept of ordered liberty.  Thus, Plaintiff does not state a cognizable claim for deprivation of his rights to substantive due process for being deprived of his radio while on C Status.

### 3.  Procedural Due Process -- Inmate Appeals

In his third claim, Plaintiff alleges that Defendant Ramirez interviewed Plaintiff concerning the 602 inmate appeal he filed on her decision to place him on C Status and did not recuse herself from the processing of that appeal.  (Doc. 16, at p. 6.)  Plaintiff alleges that Defendant Diaz "went along with" Defendant Ramirez's interview and didn't have the 602 "redone" even though Defendant Ramirez clearly acted as "judge, jury, and executioner" by placing Plaintiff on C Status and then interviewing Plaintiff on his 602 regarding that placement.  (*Id.*)  Plaintiff alleges that these actions by Defendant Ramirez violated CDCR's procedures for inmate appeals and that Defendant Diaz, as a supervisor just went along with Defendant Ramirez's actions.  (*Id.*)  Plaintiff does not state any allegations regarding the actual decision to place him on C Status in his Second Amended Complaint other than as to Defendant Ramirez's involvement handling the 602 appeal that Plaintiff filed regarding it.

As stated in the original screening order in this case, the Due Process Clause protects prisoners from being deprived of liberty without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* 515 U.S. at 484.

Plaintiff complains of Defendant Ramirez's involvement in the handling and involvement in the processing of the 602 appeal he filed regarding her finding that placed him on C Status.  Yet, "inmates lack a separate constitutional entitlement to a specific prison grievance procedure."

1    *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals

2    because no entitlement to a specific grievance procedure), citing *Mann v. Adams*, 855 F.2d 639,

3    640 (9th Cir. 1988).  "[A prison] grievance procedure is a procedural right only, it does not confer

4    any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)

5    *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Massey v. Helman*, 259

6    F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on

7    prisoner).  "Hence, it does not give rise to a protected liberty interest requiring the procedural

8    protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis*, 568 F. Supp. at 10;

9    *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  Thus, Plaintiff's claim against

10    Defendant Ramirez for her involvement in the handling of his 602 appeal regarding her decision

11    to place him on C Status is not cognizable.

12          Plaintiff's allegations against Defendant Diaz for going along with Defendant Ramirez's

13    recommendation on Plaintiff's 602 appeal likewise do not state a cognizable claim since actions in

14    reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983

15    action -- particularly where the underlying aggrieved act does not rise to the level of a

16    constitutional violation.  *Buckley*, 997 F.2d at 495.  Further, the argument that anyone who knows

17    about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is

18    not correct.  "Only persons who cause or participate in the violations are responsible.  Ruling

19    against a prisoner on an administrative complaint does not cause or contribute to the violation."

20    *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005) *accord George v. Smith*, 507 F.3d 605,

21    609-10 (7th Cir. 2007); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*,

22    97 F.3d 987, 992-93 (7th Cir.1996).  Plaintiff thus, is unable to state a cognizable claim against

23    Defendant Diaz his involvement in the handling and processing of his 602 appeal regarding

24    Defendant Ramirez's decision to place him on C Status.

25             **4. Supervisory Liability**

26          Finally, Plaintiff cannot state a claim against Defendant Diaz merely because he is

27    Defendant Ramirez's supervisor and Plaintiff finds Defendant Ramirez's actions objectionable.

28          Supervisory personnel are generally not liable under section 1983 for the actions of their

employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*.  *Iqbal*, 556 U.S. at 677.  "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer."  *Id.*  Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct.  *Id.*

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth."  *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)).  "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation."  *Id.*

Thus, Plaintiff cannot state a cognizable claim against Defendant Diaz merely because he is Defendant Ramirez's supervisor -- particularly since Defendant Ramirez's actions that Plaintiff complains of do not rise to the level of a violation of Plaintiff's constitutional rights.

### III.  CONCLUSION

Plaintiff's Second Amended Complaint fails to state a cognizable claim against any of the

1    named Defendants.  Given Plaintiff's repeated failed attempts to state cognizable claims, it

2    appears futile to allow further amendment. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir.

3    2012).  Thus, this action should be dismissed which will render Plaintiff's motion to dismiss

4    various Defendants moot.

5          Accordingly, it is HEREBY RECOMMENDED that this entire action be dismissed and

6    that Plaintiff's motion to dismiss various Defendants, filed on February 9, 2015 (Doc. 15) be

7    disregarded as moot.

8          These Findings and Recommendations will be submitted to the United States District

9    Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within 30**

10    **days** after being served with these Findings and Recommendations, Plaintiff may file written

11    objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

12    Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

13    specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834,

14    839 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

15

16   IT IS SO ORDERED.

17    Dated:   **April 15, 2015**                 **/s/ Jennifer L. Thurston**

18                                  UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28